UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 07-60089-CIV-ZLOCH/SNOW**

GINO MULLER, on behalf of
himself and those similarly situated,

    Plaintiff,

v.

AM Broadband, LLC, a
Florida Limited Liability Corporation,
d/b/a NEX-LINK

    Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, AM Broadband, LLC, by and through its undersigned counsel, pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves the Court for summary judgment in its favor. In support of this Motion, Defendant states:

### RELEVANT FACTS

The relevant facts in this matter are not in dispute. Plaintiff owns and operates Yako's Construction, Inc., a Florida corporation, registered on February 28, 2005. Plaintiff is the sole shareholder and director of Yako's. Plaintiff's Deposition at pgs. 32, 36-37. Defendant provides engineering, construction, maintenance and installation services to telecommunications providers. De la Rosa Affidavit at ¶2. In providing such services, Defendant uses employees as well as independent contractors such as Yako's. Id. at ¶5.

On October 7, 2005, Plaintiff signed, **on behalf of Yako's Construction, Inc**., a Commissioned Consultant Agreement. The Agreement is Exhibit A to the de la Rosa Affidavit. Defendant paid Yako's for work performed according to the rates set forth in the Agreement. Plaintiff's Deposition at pg. 13-14. How the work was performed and by whom was left entirely to Yako's. De la Rosa Affidavit at ¶11. Plaintiff was also in charge of how many hours he worked and of determining his own routes to any given job. Plaintiff's Deposition at pg. 57.

There was no employment relationship between Defendant and Plaintiff. All payments for work performed were made directly to Yako's and never to Plaintiff. De la Rosa Affidavit at ¶12. Yako's claimed Plaintiff as its employee in its tax returns. Plaintiff's Deposition at pgs. 45-56. At all times material, Yako's operated as a legitimate business claiming various deductions for labor, supplies, insurance, advertising, utilities, rent, etc. See Exhibits D and E to Defendant's Statement of Uncontested Facts. Further, Plaintiff purchased all tools necessary to perform all installation work including the vehicle he used.

Defendant utilizes both independent contractors and employees to perform installation work. Employees are treated quite differently than independent contractors. Employees are given benefits, are paid on an hourly basis, hourly records are kept and overtime is paid when worked, and employees are provided vehicles, tools and training. Employees are also reimbursed for expenses incurred in connection with their work. De la Rosa Affidavit at ¶6. In contrast, independent contractors such as Yako's are responsible for their own health insurance, gasoline, all out of pocket expenses, worker's compensation and vehicles. All independent contractors are expected to possess the requisite skills and training to perform all work prior to entering into an independent contractor relationship with Defendant. De la Rosa Affidavit at ¶7.

Defendant's independent contractors are solely responsible for how much work they perform, when and how. All independent contractors are responsible for hiring and training their own employees and for determining how installations are performed and which employees to assign to any installation. De la Rosa Affidavit at ¶11. Defendant's only concern is the "end result" and its customers' satisfaction. De la Rosa Affidavit at ¶7. In fact, when a client, such as a cable provider, complains that an installation job was not performed properly, independent contractors are given 24 hours to correct the work or be charged back. De la Rosa Affidavit at ¶10, 11. All independent contractors, including Yako's, are completely in charge of their own business practices. That is, no direction or control is exercised by Defendant over any independent contractor's business practice. De la Rosa Affidavit at ¶11. Further, all independent contractors are free to contract with any other companies and to hire as many employees as necessary to maximize their profitability. De la Rosa Affidavit at ¶12.

## ISSUE

Whether Plaintiff was employed by Defendant or by an independent contractor?

## ARGUMENT AND MEMORANDUM OF LAW

An application of the relevant case law to the undisputed facts in this case leads to the conclusion that Plaintiff was not Defendant's employee. Rather, Plaintiff was employed by an independent contractor, Yako's, and performed all work on behalf of that employer.

**I    Standard For Summary Judgment**

Summary judgment is proper when a party can show there are no genuine issues as to any material facts. Fed. R. Civ. P. 56(c); Beal v. paramount Pictures Corp., 20 F.3d 454 (11th Cir. 1994). The moving party has the burden of showing no material facts exist and that it is entitled to

judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)**.** It is then the opposing party's burden to establish that there are genuine facts in dispute. Although inferences are drawn in favor of the non-moving party, such inferences must be reasonable and "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Advert., 57 F.3d 1317, 1323 (4th Cir.1995). The non-moving party must not merely deny the adverse party's pleading. The non-moving party must instead respond with affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be presented to a jury for resolution. Rule 56(c), Fed.R.Civ.P.; Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Where the record, as here, cannot support a finding by a jury for the non-movant, there is no genuine issue for trial and summary judgment is proper.

The issue of whether a party is an employee or an independent contractor pursuant to the FLSA is a **legal** question to be resolved by the Court, not a jury. Antenor v. D&S Farms, 88 F.3d 925, 929 (11th Cir. 1996). Therefore, since the relevant facts are not in dispute, this matter is ripe for the Court to determine whether or not Plaintiff was an "employee" and entitled to FLSA coverage. The undisputed facts establish, according to the controlling case law, that Plaintiff was not an employee.

**II      Defendant Is Entitled To Summary Judgment Since The "Economic Realities" Test Shows Plaintiff Was Never Its Employee**

Given the undisputed facts on the record, Defendant is entitled to summary judgment. The FLSA's overtime provisions apply only to "employees." The FLSA defines 'employee" as "any individual employed by an employer." 29 U.S.C. §203(e)1. It further defines "employ" as to "suffer

or permit to work." 29 U.S.C. §203(g). The Supreme Court has held that courts must determine "whether, as a matter of 'economic reality,' an individual is an employee or an independent contractor in business for himself." Freund v. Hi-Tech Satellite, Inc., 185 Fed.Appx. 782, 782 (11th Cir. 2006)[1] citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). The facts are not in dispute and an application of the "economic realities" test reveals Plaintiff was never employed by Defendant.

A. The "Test"

In order to determine whether a person is an employee or an independent contractor in business for himself, courts consider various factors. As stated by the Rutherford Court and applied by other courts, including the 11th Circuit in Freund, the factors to consider are:

i      The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

ii     the alleged employee's opportunity for profit or loss depending upon his managerial skill;

iii    the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

iv    whether the service rendered requires a special skill;

v     the degree of permanency and duration of the working relationship;

vi    the extent to which the service rendered is an integral part of the alleged employer's business.

An application of this test to the relevant, undisputed facts in this matter can lead to no other

---

[1] Unpublished.

conclusion than that Plaintiff was not employed by Defendant.

**1.     Nature And Degree of Defendant's Control**

The undisputed facts reveal Defendant exerted no control over Plaintiff or his business practice. Defendant provided no supervision or control over Plaintiff nor how he performed the installations. Rather, Defendant's only concern was its customers' satisfaction with the installation work. De La Rosa Affidavit at ¶7. Plaintiff, like all of Defendant's independent contractors, was not obligated to report to work on any particular day. Further, Defendant had no control over how many hours Plaintiff worked, his work habits or work methods. Plaintiff set his own routes, was free to hire employees and to maximize his income by performing installations quickly and efficiently, and performing work for other companies. Therefore, since Defendant has little, if any, control over Plaintiff, this is indicative of an independent contractor relationship.

**2.     Opportunity For Profit Or Loss**

It cannot be disputed that Plaintiff was completely in charge of how much money he made. He was not compensated on an hourly basis. Rather, the Agreement between Defendant and Yako's provided Yako's was compensated for work performed based on the agreed-upon rates. Therefore, the more work orders performed by Yako's, the more money Plaintiff (as sole shareholder and director of Yako's) would make. By accepting more jobs, working more efficiently, hiring other employees and contracting with other companies Plaintiff could have maximized his (and Yako's) profits. As explained in De La Rosa's Affidavit, many of Defendant's other independent contractors employ various employees, thus enabling them to pick up more work orders and also contract with other businesses. In fact, Yako's tax returns indicate income from sources other than Defendant. The 2006 1099 issued by Defendant to Yako's reflects payments totaling $56,407.82. (See Exhibit

C to Uncontested Facts). Yet, Yako's 2006 tax return shows gross earnings of $61,738.00. Although during his deposition Plaintiff could not recall or would not say, (see Plaintiff's Deposition at pg. 60) where the additional income came from, it is clear Yako's earned income from some other source in 2006. Therefore, Yako's clearly had the opportunity to increase its profits.

Plaintiff also suffered losses when work was not properly performed. As stated in De la Rosa's Affidavit, independent contractors are given 24 hours to correct faulty work after which they are "charged back" if the work was already compensated. Employees, on the other hand, suffer no such consequences. Therefore, by performing the work efficiently and professionally, Plaintiff could also control his profits or losses.

**3.    Investment In Equipment Or Materials Required For His Task Or Employment Of Workers**

Plaintiff's deposition testimony was that he provided his own vehicle and tools required for the installations. Although he did not hire any other employees, he was clearly free to do so. Further, a review of Yako's 2005 and 2006 Income Tax Returns reveals a significant investment by Plaintiff in his business. Yako's claimed deductions for advertising, labor, purchases, automobile expenses, insurance, office supplies and professional fees. It paid rent and various other business expenses. See Exhibits D and E to Uncontested Facts.

Yako's Income Tax Returns are particularly relevant in this matter since Plaintiff himself provided the information contained in them. Plaintiff's Deposition at pg. 45. He testified in his deposition his accountant prepared the tax returns based on information Plaintiff provided. Therefore, it was Plaintiff who provided the accountant the income earned by Yako's from its subcontracting work for Defendant. Plaintiff directly benefitted from declaring this income as

**corporate income** since he was also able to take various **business** deductions for Yako's. In fact, although Yako's gross income was $58,057 for 2005 and $61,738 for 2006, after all the business deductions, the taxable income was merely $1,514.00 for 2005 and $1,719.00 for 2006. Indeed, it is disingenuous for Plaintiff to now take the position he was actually an "employee" all along when, in fact, he filed tax returns for Yako's, sworn under oath, claiming various business deductions from the income Yako's generated from Defendant. If Plaintiff really believed he was an employee of Defendant's, he should not have taken those deductions.

In any event, regardless of the implications of Plaintiff's inconsistent positions in filing corporate tax returns claiming the earned income from Defendant and now alleging he was an employee, the tax returns unequivocally establish Plaintiff ran his corporation, Yako's, as a legitimate business and incurred expenses in running that business. In fact, the expenses totaled approximately 97% of its income. This factor, again, weighs heavily in favor of Defendant's argument.

**4. Whether The Service Rendered Requires A Special Skill**

Plaintiff testified he trained for approximately two months with his first employer, GFC, in Texas, before becoming a cable installer. Today he has over ten years' experience in the field. De la Rosa's Affidavit also states that Defendant only contracts with independent contractors that already possess the requisite skill and experience necessary to satisfactorily perform the work. If that work is not performed satisfactorily, the independent contractors must correct the work within 24 hours or be charged back.

Further, an installer's job requires them to climb street polls, run cables from the polls to the houses, drill holes in walls, run cables through rooms, connect cable boxes, program boxes and

explain to subscribers how the particular models of boxes work. This type of work requires skill and knowledge. Indeed, if any average person could do the installation without any training or skills, subscribers would not need the cable company to send an installer to do the work. Subscribers would perform the installation themselves. The fact that an installer's work cannot be performed without special and specific skills and knowledge, also indicates Plaintiff was an independent contractor, possessing the requisite skills to perform the work.

**5.    The Degree Of Permanency And Duration Of The Working Relationship**

This factor also further's Defendant's argument that Plaintiff was never an employee of Defendant. Yako's performed work for Defendant for less than a year. Thereafter, Plaintiff began working as an installer for Vozzom, Inc. as an hourly employee.[2] During the time Yako's performed work for Defendant, however, Plaintiff was free to work for as many other companies as he chose and to work as many or as few days as he chose. Therefore, the permanency and duration of the relationship was entirely up to Plaintiff.

6.    **The Extent to Which the Service Rendered Is an Integral Part of the Alleged Employer's Business**

This is the only factor in the "economic realities" test which could arguably be construed in favor of Plaintiff. While it is true that the work performed by Yako's and other independent contractors is part of Defendant's business, Defendant provides other services to its clients with which Plaintiff had no involvement. Defendant provides engineering, construction, and maintenance services to the telecommunications industry. De la Rosa Affidavit at ¶2. Therefore, installation

---

[2]    A few months after filing the instant lawsuit, Plaintiff filed an FLSA action against VOZZCOM, Inc., also alleging unpaid overtime. See *Teixeira, et al. v. VOZZCOM, Inc.*, 07-60767-CIV-DIMITROULEAS/TORRES.

work, as that performed by Yako's, is only a portion of the services provided by Defendant.

Further, of the installation work offered by Defendant to is customers, (mainly major cable providers), the work performed by the independent contractors is only on an "as needed" basis. That is, Defendant has its own employees to perform the installation work. It is only when there is overflow work that independent contractors are called upon. In order to avoid hiring additional employees during peak seasons and then laying them off during slow seasons, Defendant utilizes independent contractors to handle the overflow. Therefore, even if an argument is made that the installation work is an "integral part" of Defendant's business, Defendant does not rely entirely upon its independent contractors to perform this work since it is mostly performed by its own employees and only performed by independent contractors when there is overflow.

**III    The Eleventh Circuit Resolved A Virtually Identical Issue In <u>Freund v. Hi-Tech Satellite, Inc.</u>**

The Eleventh Circuit dealt with facts virtually identical to the instant case in <u>Freund v. Hi-Tech Satellite, Inc.</u> (unpublished). There an installer of home satellite and entertainment systems brought suit under the FLSA alleging he was an employee and entitled to overtime. <u>Freund</u> at 782. The Southern District (Judge Hurley) had applied the "economic realities" test and found that Plaintiff was, in fact, an independent contractor and not an employee. The Eleventh Circuit again applied the test and reached the same result, affirming Judge Hurley's decision.

Judge Hurley as well as the Eleventh Circuit found it probative that, as here, the defendant had very little, if any, control over the plaintiff. Mr. Freund was free to perform work for other companies and was in charge of his hours and work methods. Like Defendant in this case, Hi-Tech was only concerned with the "end result of customer satisfaction." <u>Freund</u>, at 783. Mr. Freund, like

the Plaintiff in this matter, also had great flexibility to profit from his work. Those profits were entirely dependent on his own managerial skill. Since Mr. Freund, like Plainitff, was compensated by the job and not by the hour, "by accepting more jobs, performing more efficiently and hiring employees, he could earn greater sums of money." Freund, at 783.

The fact that Mr. Freund provided his own tools, supplies, and vehicle was also a factor relied upon by the Court. Freund, 784. In the instant case, not only did Plaintiff provide his own vehicle, tools, and supplies, he also incurred expenses, provided his own gasoline, tolls, car insurance and liability insurance. Mr. Freund, like Plaintiff, also required special skills to perform his work. The fact that Mr. Freund was also able to take jobs from other companies and take as few or as many jobs from Hi-Tech as he chose weighed heavily on the Court's determination that he was an independent contractor. Freund, at 784. In the instant case, Plaintiff was likewise in charge of how many or how few jobs he performed and for what company.

The Freund case, although unpublished, is strongly persuasive since the facts are virtually identical to the instant matter. The Court cited Chao v. Mid-Atlantic Installation Services, Inc., 16 Fed.Appx. 104 (4th Cir. 2001), in its opinion. The Chao case also involved cable installers who were determined to be independent contractors. There, the 4th Circuit determined the installers had "sufficient control over their jobs and profits, had special skills, and invested in their equipment enough to make them independent contractors." Freund at 784. Likewise, Plaintiff here had sufficient control over his profits, his work habits, his equipment and invested in his own equipment, tools and incurred expenses to make him an independent contractor.

## **CONCLUSION**

Defendant has been forced to defend a frivolous suit by an individual who was clearly

employed by an independent contractor. Plaintiff worked for Yako's, Inc., and benefitted from having his own corporation by claiming large deductions in the corporate tax returns. Plaintiff now alleges he was actually an employee all along and owed overtime by Defendants. The record establishes, without a doubt or controversy that Plaintiff, on behalf of Yako's, entered into an independent contractor agreement and agreed to accept certain payments for certain installations. Plaintiff was never paid on an hourly basis. Rather, Yako's was compensated for work performed. Therefore, Plaintiff, as Yako's sole employee, director and owner was entirely in charge of how much money he and Yako's made by accepting more work orders and working more efficiently. Plaintiff was not dependent on Defendant for his economic well being. Rather, Plaintiff was solely in charge of his financial status and was free to contract with as many companies as he deemed fit and hire any and all employees necessary to maximize his profits. That he chose not to do so is not controlling. The fact that Defendant was not in charge of these factors is indicative of an independent contractor relationship.

WHEREFORE, Defendant respectfully requests this Court find that, as a matter of law, Plaintiff was not an employee and issue summary judgment in Defendant's favor.

Respectfully submitted,

By:s:/Blanca R. Sordo
FBN 0196037

Blanca R. Sordo
FBN 0196037
Law Offices of Goldstein & Sordo
9350 South Dixie Highway, 10th Floor
Miami, Florida 33156
Tel (305) 670-1222
Fax (305) 670-7065
E-mail Bsordo@goldsteinsordo.com

I HEREBY CERTIFY that on the 2nd day of January, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:s:/Blanca R. Sordo
FBN 0196037

Blanca R. Sordo
FBN 0196037
Law Offices of Goldstein & Sordo
9350 South Dixie Highway
Tenth Floor
Miami, Florida 33156
Tel (305) 670-1222
Fax (305) 670-7065
E-mail Bsordo@goldsteinsordo.com

SERVICE LIST
Gino Muller v. AM Broadband, LLC
Case No. 07-60089-CIV-ZLOCH/SNOW
United States District Court, Southern District of Florida

Kelly Amritt, Esq.
Kelly@cellerlegal.com
Morgan & Morgan
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel:   (954) 318-0268
Fax:   (954) 333-3515
Attorney for Plaintiff Gino Muller
CM/ECF